**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MARK J. WILSON,

      Plaintiff and Counter-Defendant,

v.                              CV 07-457 WPL/LAM

JOHN BRENNAN, MICHELLE GEELS,
TOUR OF THE GILA INC., DOYNE
WREALLI and ROB NARVAEZ,

      Defendants and Counter-Plaintiffs.

**ORDER**

Unsurprisingly, given the animosity between those involved in this dispute, the parties have filed cross motions to alter or amend my findings of fact and conclusions of law and the judgment pursuant to Federal Rules of Civil Procedure 52(b) and 59(e).  (Docs. 148, 150.)  Plaintiff Mark Wilson challenges my ruling that he is not entitled to statutory damages and asks that I amend the judgment to impose statutory damages on Defendants Brennan, Geels, Narvaez and the Tour of the Gila, Inc. (the Tour).  Defendants challenge my conclusion with regard to the validity of Wilson's copyright registrations and my infringement analysis.  They move to amend my findings and conclusions and to direct judgment in their favor.  They also renew their request for attorney's fees and costs pursuant to 17 U.S.C. § 505.  In addition, Defendants have separately filed an application for attorney's fees and a motion to tax costs, in accordance with Local Rules 54.1 and 54.5.  (Docs. 154, 156.)

A motion to alter or amend under Federal Rule of Civil Procedure 52(b) may be granted to correct manifest errors of law or fact or to consider newly discovered evidence.  *See Lyons v.*

*Jefferson Bank & Trust*, 793 F. Supp. 989, 990-91 (D. Colo. 1992). A Rule 59(e) motion to alter

or amend the judgment is proper due to an intervening change in law, newly discovered evidence,

or to correct clear error or prevent manifest injustice. *See Servants of Paraclete v. Does*, 204 F.3d

1005, 1012 (10th Cir. 2000). These motions are not intended to relitigate the same issues, present

new theories, introduce evidence available at trial that was not proffered, or re-argue the merits. *See*

*Paramount Pictures Corp. v. Video Broad. Sys., Inc.*, No. 89-1412-C, 1989 WL 159369, at *1 (D.

Kan. Dec. 15, 1989) (unpublished) (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219

(5th Cir. 1986)); *see also In re Busch*, 369 B.R. 614, 621 (B.A.P. 10th Cir. 2007) (citing *Fontenot*,

791 F.2d at 1219). They are appropriate where a court has misapprehended the facts, a party's

position, or the controlling law. *Servants of Paraclete*, 204 F.3d at 1012. They are not appropriate

to revisit issues already addressed or advance arguments that could have been raised in prior

briefing. *Id.* "A party's failure to present his strongest case in the first instance does not entitle him

to a second chance in the form of a motion to amend." *Arnett v. U.S.*, 910 F. Supp. 515, 517 (D.

Kan. 1995). The decision to grant or deny the motion is in the sound discretion of the trial court.

*See Matthews v. C.E.C. Indus. Corp*, No. 98-4184, 1999 WL 1244491, at *7 (10th Cir. Dec. 21,

1999) (unpublished); *see also Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1523

(10th Cir. 1992).

Wilson asserts that I have made an error of fact. I disagree and therefore deny Wilson's

motion. Defendants make a variety of arguments, most of which are reformulations of previous

arguments.[1] Throughout this litigation Defendants' presentation of both the facts and the law has

---

[1] Wilson responds to Defendants' motion partly on procedural grounds arguing that it was not timely filed. The Federal Rules of Civil Procedure require that Defendants' motion be filed within ten days of entry of judgment and, when the period is less than eleven days, intermediate Saturdays, Sundays, and legal holidays are excluded. FED. R. CIV. P. 6(a)(2), 52(b), 59(e). The three-day service extension that Wilson

been inconsistent, confusing, and contradictory.  For example, in the past they have attempted to argue simultaneously that the Race Bible belongs to the Tour (*see* Doc. 126 at 2, 6, 9-10; Doc. 144 at 8); that the Race Bible is comprised of preexisting works that were created by "others" (including Steve Farris and Todd Jones) but that belong to the Tour (*see* Doc. 126 at 2, 6, 9-10; Doc. 144 at 5, 7, 8-9); that there was no agreement between Defendants and Wilson in 2002 regarding the terms of Wilson's engagement (*see* Doc. 126 at 3) yet the Tour only authorized Wilson to update the Race Bible (*see* Doc. 126 at 5-6; Doc. 144 at 2); that Defendants never purchased the race materials from Wilson (*see* Doc. 63 at ¶¶ 7-8) but Brennan did purchase the materials, or the right to use them, from Wilson (*see* Doc. 126 at 3, 9; Doc. 144 at 9-10); and that the Tour received an irrevocable license from Wilson to use his materials (*see* Doc. 95 at 4, 13; Doc. 126 at 9; Doc. 144 at 9).

In their motion to amend Defendants have recast these arguments into the following formulation: the Tour does not own the copyrights in the underlying work; Steve Farris and Todd Jones created the text and graphics for the Race Bible; however, they implicitly granted the Tour a nonexclusive license to use these materials and to make derivative works; as nonexclusive licensee, the Tour could not authorize Wilson to make his own derivative works because that would exceed the scope of the license; so Wilson's works are illegal derivatives.  (*See* Doc. 148 at 2-3.) To the extent that Defendants attempt to rehash previous arguments, their motion is denied.  *See Servants of Paraclete*, 204 F.3d at 1012; *Paramount Pictures*, 1989 WL 159369, at *1.  To the extent that Defendants attempt to offer a new theory based on the grant of a nonexclusive license from Farris and Jones to the Tour, their motion is also denied.  *See Servants of Paraclete*, 204 F.3d

---

claims does not apply to this case is not the same rule as that excluding intermediate Saturdays and Sundays. *Compare* FED. R. CIV. P. 6(a)(2), *with* FED. R. CIV. P. 6(d).  I entered judgment on July 7, 2009.  Defendants' motion must have been filed by July 21, 2009.  Defendants timely filed their motion on July 19, 2009.

at 1012; *Paramount Pictures*, 1989 WL 159369, at *1.  Defendants' reformulation does, however, clarify their view of derivative works and suggests that my findings and conclusions could be misinterpreted.  Accordingly, I will amend my findings and conclusions as described below. Furthermore, upon further review, I have discovered that several paragraphs of Race Bible text were mischaracterized.  I will amend my findings and conclusions and the judgment to correct this.  *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1358 (Fed. Cir. 2006) (noting that a district court has discretion to amend any of its findings and modify the judgment accordingly in light of a Rule 52(b) motion).

### PLAINTIFF'S MOTION

Wilson seeks to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).  He contends that due to an error of fact, the original judgment fails to provide relief that he is entitled to receive.  Specifically, Wilson argues that he is entitled to statutory damages because the evidence at trial showed that Defendant Narvaez first posted the race materials on the Internet just before the 2005 race and that Wilson registered his copyright within three months of this act of infringement. (Doc. 150 at 1-2.)  Wilson further argues that he can recover statutory damages from Defendants Brennan, Geels and the Tour, in addition to Narvaez, under theories of contributory infringement and vicarious liability.  (*Id.* at 2-3.)

Wilson's argument fails for both factual and legal reasons.  There was no error of fact.  The evidence at trial showed that Defendant Narvaez posted the race materials on the Internet in 2004. Furthermore, the applicable statutory provision states:

> [N]o award of statutory damages or of attorney's fees . . . shall be made for . . . (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

4

17 U.S.C. § 412. Wilson's materials were first published in the 2000 Course Itineraries & Time Schedules and the 2002 Race Bible.[2] Defendants' infringement commenced with regard to Wilson's textual materials and compilations in 2003 and with regard to his graphics in 2004. (Doc. 146 at 28.) Wilson registered his work on April 25, 2005. Thus, Defendants' infringement commenced "after first publication of the work and before the effective date of its registration." (*See id.*) Even if Defendant Narvaez did not post the race materials on the Internet until 2005, his infringement was part of the same series of infringing acts that commenced in 2003 with regard to the text and factual compilations and in 2004 with regard to the maps. (*See id.*, citing *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998).) Consequently, Wilson must have registered within three months of first publication to receive statutory damages. He did not register until nearly three years after first publication.[3] He is ineligible to receive statutory damages and his motion to alter or amend the judgement is denied.

### DEFENDANTS' MOTION

Defendants challenge my conclusions with regard to the validity of Wilson's registrations and my infringement analysis. They ask that I amend my findings of fact and conclusions of law

---

[2] As noted in my findings and conclusions, although the parties' arguments focus on the 2002 race materials, it was the 2000 Course Itineraries & Time Schedules that Wilson registered with the Copyright Office. (*See* Doc. 146 at 6 n.4.)

[3] In his untimely reply brief, Wilson argues that the distribution of the Course Itineraries & Time Schedules, Race Bible, and Race Announcement to racers, prospective racers, course officials, and volunteers did not constitute publication and that the materials were first published when Defendant Narvaez posted them on the Internet. The timing of publication is fundamental to Wilson's request for statutory damages, yet Wilson did not address it at trial and barely alluded to it in his closing statement. A Rule 59(e) motion is not appropriate to revisit issues already addressed or to advance arguments that could have been made in prior briefing. *Servants of Paraclete*, 204 F.3d at 1012. Moreover, Wilson did not challenge my decision regarding the publication of his materials in his initial Rule 59(e) motion, but waited until his untimely reply to assert this challenge. I need not consider this late argument. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (finding that district court did not abuse its discretion when it declined to consider argument raised in Rule 59(e) reply brief).

to hold that Wilson's copyright registrations are invalid, or, in the alternative, that Wilson's works lacked any protectable expression and Defendants' use of those works did not constitute infringement.  They argue that judgment should be directed in their favor, enabling them to obtain attorney's fees under to 17 U.S.C. § 505 as the prevailing party.  For the reasons that follow, I reject Defendants' arguments but nevertheless amend the order and judgment to clarify certain ambiguities raised by Defendants' motion.

*Validity of Registrations*

Defendants contend that Wilson's registrations are invalid because 1) his registrations contained material errors that he never corrected, 2) he failed to satisfy the mandatory registration requirements, and 3) his works were illegal derivatives of preexisting works of others.  Most of the deficiencies that Defendants allege in Wilson's copyright applications are not the type of deficiency that would invalidate his registrations.[4]   Courts have generally taken a liberal approach to inadvertent errors on copyright applications, forgiving even serious mistakes.  *See, e.g.*, *Testa v. Janssen*, 492 F. Supp. 198, 201 (D.C. Pa. 1980); *see also* MELVILLE B. NIMMER & DAVID NIMMER, 4 NIMMER ON COPYRIGHT § 7.20[B] (2008) (discussing cases).  A misstatement of immaterial fact or a clerical error will not invalidate the registration.  *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161 (1st Cir. 1994).  "Immaterial errors are those that are 'not likely to have led the Copyright Office to refuse the application.'"  *Torres-Negron v. J & N Records, L.L.C.*, 504

---

[4] At trial, Defendants attacked the validity of Wilson's registrations only on the basis that he failed to indicate that his work was based on the preexisting work of others.  They did not argue that he misrepresented the publication status of his work or that he failed to meet the registration requirements. Generally, arguments not presented at trial cannot be raised by a later motion to alter or amend.  *See Servants of Paraclete*, 204 F.3d at 1012; *cf. Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720-22 (10th Cir. 1993). However, because these arguments constitute a challenge to jurisdiction, I must consider them now.  *See La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1206 (10th Cir. 2005) (concluding that registration is a prerequisite to suit); FED. R. CIV. P. 12(h).

F.3d 151, 158 (1st Cir. 2007) (quoting *Data Gen.*, 36 F.3d at 1161).  However, if a party knowingly and intentionally fails to advise the copyright office of facts that might have led to the rejection of the application, the registration may be invalid.  *See Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 667 (3rd Cir. 1990); NIMMER, *supra*, § 7.20[B].

As I previously explained, the law on material, inadvertent omissions from a registration application is less well settled than the law on knowing or intentional omissions.  (*See* Doc. 146 at 9.)  I adopted the approach suggested by the First and Third Circuits, which deprives a party of the presumption of validity that ordinarily attaches to a certificate of registration and requires him to establish that the works are entitled to copyright protection.  (*Id.*)  Because I considered that Wilson may have inadvertently failed to provide information that might have been material, I required him to prove that his works were entitled to protection.  (*Id.* at 8-9.)  Defendants' arguments do not change my determination that Wilson has a valid copyright in his text, maps, profiles and factual compilations.

Defendants contend that Wilson misrepresented that his work was unpublished and did not provide the correct deposit copies with his application.  (Doc. 148 at 5.)  I have found that Wilson's materials were published when they were distributed to racers, potential racers, volunteers, and course officials.  (Doc. 146 at 27.)  Thus, Wilson's registrations erroneously stated that his works were unpublished.  Defendants claim that "it is a material misrepresentation to state that a work was unpublished, when in fact it was published."  (Doc. 148 at 5.)  Wilson's amended registrations indicate that he did not understand certain aspects of copyright law when he filed his applications, but he voluntarily amended his registrations several times to correct errors.   (*See* Exs. 162, 163, 165.)  This suggests inadvertence, not wilfulness or deceit.  "A party seeking to establish an allegation of fraud on the copyright office bears a heavy burden."  *Lennon v. Seaman*, 84 F. Supp.

2d 522, 525 (S.D.N.Y. 2000). Defendants did not carry their burden. They did not show that the errors in Wilson's registrations were knowing or intentional.

Nor have they provided any support for their contention that an error in the publication status of Wilson's work was a material error. A material fact is one that, if known, might have caused the Copyright Office to reject the application. *See Torres-Negron,* 504 F.3d at 161. "One purpose of the registration requirement is to allow the Copyright Office to make an initial judgment about the validity of copyrights, based on its experience and expertise, and to reduce the burdens of litigation by giving that judgment some weight in subsequent litigation." *Id.* Defendants have provided no legal authority to demonstrate that the Copyright Office would have refused to register Wilson's work if it had known the work was published. My own research suggests that the fact of publication is not a material fact in Wilson's case.

The Copyright Act provides for the registration of both unpublished and published works. 17 U.S.C. § 408(b). While publication was of immense importance under the 1909 Act, it no longer carries the same significance under the 1976 Act. *See* NIMMER, *supra,* § 4.01 (discussing the significance of publication). Under the 1909 Act, whether a work was published determined whether state or federal law governed and whether federal copyright protection was available. *See La Resolana,* 416 F.3d at 1198; NIMMER, *supra,* § 4.01[B]. With the Copyright Act of 1976, Congress clarified that the satisfaction of statutory formalities is not necessary for copyright protection to exist because a copyright arises at the moment of tangible expression. *See La Resolana,* 416 F.3d at 1198; 17 U.S.C. § 102(a). Although publication is still important in several contexts, none of them apply to Wilson's registrations. *See* NIMMER, *supra,* § 4.01[A] (discussing the significance of publication for works published after January 1, 1978). I am unaware of any reason to believe that the fact of publication would have led the Copyright Office to reject Wilson's

registrations.   Moreover, under the 1909 Act, the date of publication could be decisive in determining copyrightability, yet the courts excused innocent errors in the date of publication.  *See, e.g.*, *Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956); *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.*, 244 F. Supp. 287 (D.C. Fla. 1965); NIMMER, *supra*, § 7.20[B].  Thus, I conclude that the characterization of Wilson's works as unpublished was not a material error.

Defendants also complain that Wilson failed to satisfy mandatory registration requirements because he did not provide two deposit copies and did not provide the best edition of his works.  *See* 17 U.S.C. § 408(b)(2) (providing that, for published works, "the material deposited for registration shall include two complete copies of the best edition").  They argue that an incomplete application invalidates a registration.  (Doc. 148 at 5-6, citing *Torres-Negron*, 504 F.3d at 160-61.)  Defendants are standing on technicalities.  Two deposit copies of the best edition are required for a published work.  Wilson submitted applications for unpublished works.  His applications, as filed, were not incomplete.  I have already determined that the error regarding the publication status was inadvertent and immaterial.   It would be contradictory to invalidate Wilson's registrations due to an administrative deficiency when the mischaracterization giving rise to the deficiency does not invalidate them.

Finally, Defendants attack the validity of Wilson's registrations on the ground that his works are illegal derivatives of preexisting text by Steve Farris and preexisting maps by Todd Jones. Defendants contend that Wilson derived his maps and text without permission from the underlying copyright owners and that his failure to indicate that his works are derivative is a material error that invalidates his registrations.  Failure to disclose that a registered work is derivative of an earlier work of another could invalidate the registration if the work is derived without permission from the underlying copyright owner.  *See* NIMMER, *supra*, § 7.20; *cf. Watkins v. Chesapeake Custom Homes,*

9

*L.L.C.*, 330 F. Supp. 2d 563, 571-72 (D. Md. 2004) (holding that plaintiffs were not entitled to presumption of validity from certificate of registration for this reason). However, in this case, Wilson's statements regarding the derivative nature of his works do not invalidate his registrations.

With regard to Wilson's graphics registration, Defendants' argument fails. I found that Wilson derived his maps from government documents and that he voluntarily amended his registration to reflect this. (Doc. 146 at 8, 14.) Furthermore, public domain materials are "free for the taking." *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1494 (10th Cir. 1993) (internal citation omitted); *see also Feist Publ., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) (noting that facts "may not be copyrighted and are part of the public domain available to every person") (internal quotations omitted). I also found that Wilson amended his text registration to indicate that his text was based on prior works. (Doc. 146 at 8.) In light of Defendants' arguments, I recognize that this statement implies that Wilson derived his text from the work of others and that he amended his registration to reflect this. In fact, Wilson's amendment indicates that his text was derived from his own prior work. (*See* Doc. 165.) However, because I do not view Wilson's text as a derivative work, Defendants' argument with regard to Wilson's text registration also fails.[5]

This copyright dispute involves an unusual set of works. The document known as the Race Bible is composed of a variety of materials including photographs, maps, profiles, and text. The Race Bible text is not a single creative writing like a novel or a drama. Rather it is a compilation of both creative narrative descriptions and factual compilations conveyed in textual passages.

---

[5] Wilson presented no evidence of his prior textual work. Regardless of whether Wilson's text is derivative of his own work as he suggests, or is new text as I conclude, the result is the same: he has a valid copyright.

Discrete passages of text are interspersed throughout the Race Bible. Wilson does not claim copyright in the entire Race Bible text, only in the new passages that he added in 2002. The narrative descriptions and factual information that Wilson added are not derivative as that term is used in copyright law.

> The Copyright Act defines derivative work as:
>
> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101. Some common examples of derivative works include a painting of a photograph, a motion picture based on a novel, and an English translation of a foreign language work. *See Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 90 n.11 (1st Cir. 2007); *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1197 (10th Cir. 2005); *Warren Pub., Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1515 n.16 (11th Cir. 1997); *Gracen v. Bradford Exch.*, 698 F.2d 300, 302 (7th Cir. 1983); *see also* NIMMER, *supra*, § 3.03[A]. Nimmer has suggested that "a work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of the copyright proprietor of such pre-existing work." NIMMER, *supra*, § 3.01.

Wilson's textual additions to the 2002 Race Bible are unlike the English translation of a foreign language work or a motion picture based on a novel. Wilson did not derive his narrative descriptions and factual compilations from the preexisting work of another author. They are new

and wholly his own.[6]  The ideas and information they convey were not previously present in the Race Bible.  Wilson merely inserted his new text alongside the other materials—including text written by Steve Farris—that are assembled into the Race Bible.  On the unique facts of this case, I do not consider Wilson's text a derivative work.  My holding that Wilson has a valid copyright in his text—narrative descriptions and factual compilations—stands.  However, given some ambiguity in this discussion in the original opinion, I will amend my findings and conclusions to clarify this point.

### Infringement Analysis

Defendants also challenge my determination that they infringed Wilson's copyrights in his text and maps, arguing that I failed to apply the proper infringement analysis.  The dispositive question in my infringement determination and in Defendants' challenge is whether Defendants copied constituent elements of Wilson's works that are original.  *See Feist*, 499 U.S. at 361. Defendants argue that to find the constituent elements of Wilson's maps I must filter out facts, *scenes a faire*, elements inherent in the idea of a work, and common conventions such as shading and fonts.  (Doc. 148 at 7.)  They claim that once this filtering is done, "there is nothing left but plaintiff's overlaid titles done in a lighter shade."  (*Id.* at 8.)

To the extent that Defendants urge an application of the Tenth Circuit's abstraction-filtration-comparison analysis, I decline to use that method in this case.  The Tenth Circuit has acknowledged that, "[w]hile abstraction-filtration-comparison analysis is useful in a variety of copyright cases, not every case requires extensive analysis."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 n.5 (10th Cir. 2002) (citing *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997)).  Determining

---

[6] Defendants argue that Wilson has not proved that he created the text.  I address this argument *infra* at 15-16.

whether a defendant's work is substantially similar to legally protectible elements in a plaintiff's work is "primarily a qualitative rather than a purely quantitative analysis, and must be performed on a case-by-case basis." *Id.* at 943. "The appropriate test to be applied and the order in which its various components are to be applied may vary depending upon the claims involved, the procedural posture of the suit, and the nature of the works at issue." *Id.* at 943 n.5 (internal quotations omitted).

Maps are unique in that they are compilations of fact but are also characterized by the Copyright Act as "pictorial, graphic and sculptural works." *See Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 142 (5th Cir. 1992); *see also* 17 U.S.C. § 101. The pictorial aspect of maps has led the circuits that have considered a test for substantial similarity to focus on both the selection, coordination, and arrangement of facts and the pictorial and graphic nature of the way those facts are depicted. *See Mason*, 967 F.2d at 142; *see also Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 748 (2nd Cir. 1998). The Tenth Circuit has not yet considered a substantial similarity test for maps. Given the unique nature of these works, I found the approach adopted by the Second and Fifth Circuits persuasive and examined both the selection, coordination, and arrangement of facts in Wilson's maps as well as the pictorial representation of those facts. (*See* Doc. 146 at 17-18.)

Defendants' assessment of the original elements of Wilson's work is incorrect. Wilson's copyright lies in his original selection, coordination, and arrangement of facts and in his pictorial and graphical expression of those facts. As the Supreme Court explained in *Feist*, although facts are not copyrightable, a factual compilation may be. *See Feist*, 499 U.S. at 348. The Court explained,

> The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of

13

creativity, are sufficiently original that Congress may protect such compilations through the copyright laws.

*Id.* Furthermore, the requisite level of creativity is extremely low; the work need not be innovative or surprising. *See id.* at 345, 362. In this case, while recognizing that Wilson cannot copyright the underlying physical facts—geographic locations, street names, landmarks, and so on—I found that his selection, coordination, and arrangement of those facts was sufficiently creative for copyright protection. (*See* Doc. 146 at 13-16.) Wilson made choices regarding which landmarks, geographical features, and roads to include and how to most effectively display the information pictorally in the maps. (*See id.* at 15.) While shading, labels and standard fonts do not meet the minimal level of creativity for copyright protection, I found that Wilson made numerous choices about how to depict roads, direction of travel, and political boundaries that went beyond common conventions and exhibited originality. (*See id.*)

My side-by-side comparison of the 1999 and 2002 Fort Bayard start/finish maps demonstrates how one can start with the same facts and arrive at a significantly different pictorial presentation through different selection, coordination, and arrangement. (*See id.* at 14-15.) Wilson's 2002 maps were quite different from the maps used in previous years due to Wilson's independent selection, coordination, and arrangement. After 2003, Defendants infringed Wilson's copyright in his maps because they copied his 2002 selection, coordination, and arrangement.

In the opinion, I cited *Rockford Map Publishers, Inc. v. Directory Serv. of Colorado, Inc.*, 768 F.2d 145 (7th Cir. 1985) and noted that Defendants cannot start with Wilson's work as a template and then edit it. (Doc. 146 at 19.) Defendants argue that the principle of industrious collection discussed in *Rockford Map* was overruled by *Feist*. *Feist* did not overrule *Rockford Map*, although it did reject that aspect of the Seventh Circuit's reasoning. To avoid confusion, I will

amend my findings and conclusions with regard to citation of that case.  However, Defendants argument with regard to my infringement analysis still fails.

As *Feist* made clear, Wilson may not claim copyright in the facts underlying his maps.  *See Feist*, 499 U.S. at 347.  Thus, Defendants may select the same facts and prepare their own maps based on those facts.  *See id.* at 348.  Defendants may even get those facts from Wilson's maps, rather than referring to the original government and public domain sources that Wilson used.  *See id.* at 349-350.  They may independently arrange the facts that they select from Wilson's work.  *See id.* at 349  ("[A] subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement.").  The resulting maps may look quite similar to Wilson's maps.  *See id.* at 345 ("A work may be original even though it closely resembles other works, so long as the similarity is fortuitous, not the result of copying.").  Defendants' arguments fail, and Defendants have infringed Wilson's copyright in his maps, because they did not make an independent selection, coordination, and arrangement.  They copied Wilson's selection, coordination, and arrangement.

Defendants Wrealli and Geels testified that they copied Wilson's maps and modified them.  In their motion to alter or amend, Defendants admit that they scanned Wilson's 2002 graphics in 2003, when they were under license to do so, and then "each subsequent year [they] changed their maps even more, in part to avoid trouble with plaintiff, in part to reflect new information and in part to improve the readability of the maps."  (Doc. 148 at 7.)  They contend that they never scanned Wilson's graphics again.  Defendants have essentially testified and admitted to infringement.  What they scanned in 2003 was Wilson's selection, coordination, and arrangement of facts.  They are wrong to think that they can use Wilson's selection, coordination, and arrangement as a template, and edit it.  Minor changes in subsequent years, such as removing map titles, removing gray shading,

15

changing font and reducing the size of the maps, do not constitute an independent selection, coordination, and arrangement of the facts. Defendants provided no evidence that they independently selected, coordinated, and arranged the factual information to create the maps used after 2003. Defendants' maps are substantially similar to Wilson's maps and the similarity is not merely fortuitous; it is the result of copying. *See Feist*, 499 U.S. at 345.

With regard to the text, Defendants argue that there is no evidence that Wilson authored the text. To the contrary, Wilson testified that he wrote the text, he included the text in his text registration with the Copyright Office, and he wrote to Brennan indicating that he was "redoing the Race Bible to make the information easier to read and to check with the entry form information." (Ex. 84.) Defendants claim and Brennan and Geels testified that they edited Wilson's drafts of the 2002 Race Bible. Yet they provided no evidence that they wrote or edited the specific text at issue. Defendants further assert that Wilson's testimony did not pinpoint his original textual expression, so Defendants were unable to challenge Wilson's claim as to any specific passage. Wilson filed his text registration in 2005 and an abridgment in 2007 in an effort to register only those portions of the Race Bible that Wilson thought he had created. (*See* Exs. 164, 224.) Although the 2007 abridgment still contained more text than I have attributed to Wilson's creation, it put Defendants on notice as to Wilson's claim in the text. Defendants could have attempted to rebut Wilson's claim with evidence regarding specific passages, but they only offered vague testimony that Brennan and Geels generally edited Wilson's drafts.

Additionally, Defendants again argue that I must find the constituent elements of Wilson's text by filtering out facts, short phrases, titles, common conventions, and *scenes a faire,* and that once this is done, the remaining expression is so devoid of creativity that it is not entitled to any protection and there is nothing left for Defendants to infringe. Much of Wilson's text conveys

16

factual information.  I attempted to distinguish between Wilson's more creative narrative description and his compilations of facts and I did not enjoin Defendants from using Wilson's compilations as the creativity involved did not justify injunctive relief.  Defendants have not challenged my rulings with regard to Wilson's factual compilations.  Although the line between narrative text and compilation was sometimes difficult to draw, the passages that I have characterized as text exhibit greater creativity and are entitled to greater protection.  Abstraction-filtration-comparison is not necessary here because Wilson's narrative descriptions constitute creative expression that Defendants copied nearly verbatim.  To the extent that Wilson's text conveys factual information, Defendants must arrive at their own expression of these facts.

### COSTS AND ATTORNEY'S FEES

After making the above arguments, Defendants renew their requests for costs and attorney's fees pursuant to 17 U.S.C. § 505.  (Doc. 148 at 9-11.)  They have also filed separate motions for an award of attorney's fees and a bill of costs in accordance with Local Rules 54.1 and 54.5.  (Docs. 154, 156.)  Defendants maintain that, based on the above arguments, they should prevail on all copyright claims and, therefore, they are entitled to an award of costs and fees under 17 U.S.C. § 505.  They also contend that the factors that should guide a court in exercising its discretion to award costs and fees weigh in favor of awarding costs and fees to Defendants in this case.  (*See* Doc. 148 at 9-11 citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).)

As explained above and in my findings and conclusions, Defendants have not prevailed on all copyright claims.  They have infringed on Wilson's copyright in his text, factual compilations, and maps.  Although I have not awarded statutory damages, I have enjoined Defendants from using Wilson's text and maps without his permission in the future.  I have already weighed the *Fogerty* factors and found that they did not weigh in favor of an award of costs or attorney's fees.  (Doc. 146

17

at 31-32.)  This was a factually and legally complex case in which both parties prevailed in part. The remaining factors do not support awarding costs and fees to Defendants.[7]

## CONCLUSION

Wilson's motion to alter or amend the judgment is denied.  Defendants' motion to amend findings and conclusions and enter a new judgment is denied.  Defendants' application for attorney's fees and motion for bill of costs are denied.  An amended order and judgment are issued herewith.

IT IS SO ORDERED.

*William P. Lynch*

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

---

[7] I decline to consider late-presented evidence of Wilson's state court litigation.

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.                18